UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 13-02064 JGB (SPx)** | Date | February 1, 2016 |
|---|---|---|---|
| Title | ***Matthew Donaca v. Lifewatch Inc., et al.*** | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Adele C. Frazier |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff: | Attorney(s) Present for Defendants: |
|---|---|
| Stephen J. Simoni | Jason P. Sultzer |
| Katrina Carroll | |

**Proceedings:      Order DENYING Plaintiff's Motion for Class Certification Without Prejudice (Doc. No. 60) (HEARING HELD)**

Before the Court is Plaintiff Matthew Donaca's Motion for Class Certification.  (Doc. No. 60.)  After considering the papers submitted in support of and in opposition to the Motion and the arguments of counsel at the hearing on this matter, the Court DENIES Plaintiff's Motion for Class Certification without prejudice.

## I.   BACKGROUND

### A.   Procedural History

On November 8, 2013, Plaintiff John Sacchi ("Sacchi") filed a class action complaint against Lifewatch, Inc. ("Lifewatch") and Evan Sirlin ("Sirlin"), individually and as CEO of Lifewatch.  ("Compl.," Doc. No. 1.)  The Complaint alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C.§§ 227 et seq., in addition to causes of action for fraud and negligence.  (Id.)  On January 6, 2014, Lifewatch and Sirlin filed motions to dismiss and strike portions of the Complaint.  (Doc. Nos. 6, 7.)  On January 23, 2014, Sacchi filed a notice of non-opposition to Lifewatch and Sirlin's motions, indicating he intended to file a First Amended Complaint in accordance with Federal Rule of Civil Procedure 15(a)(1)(B).  (Doc. No. 13.)  On January 29, 2014, the Court found Sacchi consented to Lifewatch and Sirlin's motions to dismiss, granted them, and dismissed the Complaint with leave to amend.  (Doc. No. 14.)

On February 7, 2014, Sacchi was replaced with Plaintiff Matthew Donaca ("Plaintiff"), who filed a First Amended Complaint.  ("FAC," Doc. No. 19.)  On February 10, 2014, Lifewatch and Sirlin filed another set of motions to dismiss and strike.  (Doc. Nos. 17, 18.)  The Court

granted Sirlin's motion to dismiss for lack of personal jurisdiction, granted both motions to dismiss for failure to state a claim, and denied both motions to strike the class action allegations from the FAC.  (Doc. No. 27.)  The Court granted Plaintiff leave to amend.  (Id.)

On April 21, 2014, Plaintiff filed a Second Amended Complaint on behalf of a putative class against Lifewatch and Does 1-10 (collectively "Defendants").  ("SAC," Doc. No. 29.)  Plaintiff dropped Sirlin as a defendant.  (Id.)  The SAC states four causes of action for: (1) robocalls in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(1)(B); (2) knowing and/or willful violations of the robocall provision of the TCPA; (3) caller ID spoofing and violation of the name and number identification requirement pursuant to the regulations enforcing the TCPA; and (4) knowing and/or willful violations of the caller ID spoofing prohibition and name and number identification requirements under the TCPA.  (Id.)

On May 12, 2014, Lifewatch filed a motion to dismiss the SAC.  (Doc. No. 30.)  On June 5, 2014, the Court denied Lifewatch's motion to dismiss.  (Doc. No. 33.)  On June 25, 2014, Lifewatch filed an Answer to the SAC.  (Doc. No. 34.)

On December 7, 2015, Plaintiff filed his Motion for Class Certification.  ("Motion," Doc. No. 60-1.)  In support of his Motion, Plaintiff submitted a declaration of Plaintiff's counsel Stephen J. Simoni ("Simoni Decl.," Doc. No. 60-3) and the following eighteen exhibits:[1]

- **Exhibit A:** Declaration of Roberto Menjivar ("Menjivar Decl.," Doc. No. 60-4), attaching four documents ("Attach. I, K, L, and XX");
- **Exhibit B:** Declaration of Joseph Settecase ("Settecase Decl.," Doc. No. 60-5);
- **Exhibit C:** Declaration of Leslie Steinmetz and two accompanying exhibits ("Steinmetz Decl.," Doc. No. 61-1);
- **Exhibit D:** Declaration of Kenneth Gross ("Gross Decl.," Doc. No. 61-2), attaching four documents ("Attach. A, B, C, and D");
- **Exhibit E:** Declaration of Michael Hilgar ("Mot. Hilgar Decl.," Doc. No. 61-3), attaching one document ("Attach. A");
- **Exhibit F:** Declaration of Brick Kane ("Kane Decl," Doc. No. 61-4), attaching one document ("Attach. A");
- **Exhibit G:** Declaration of Paul deLoca ("deLoca Decl," Doc. No. 61-5);
- **Exhibit H:** Declaration of Eliza K. Bradley ("Bradley Decl," Doc. No. 61-6), attaching one document ("Attach. C.");
- **Exhibit J:** Excerpts of a transcript of a September 28, 2015 deposition of Plaintiff ("Pl. Donaca Depo. Excerpts," Doc. No. 62-1);
- **Exhibit K:** Lifewatch's Initial Disclosures Under Rule Rule 26(a)(1) ("Lifewatch Initial Disclosures," Doc. No. 63-1);
- **Exhibit L:** A copy of the Ninth Circuit's unpublished disposition in Life Alert Emergency Response, Inc. v. LifeWatch, Inc., 601 F. App'x 469 (9th Cir. 2015) (Doc. No. 63-2);

---

[1] Plaintiff also presents a copy of the SAC as "Exhibit I."  (Doc. No. 61-7.)

- Exhibit M: Declaration of Laureen France ("France Decl," Doc. No. 63-3), attaching two documents ("Attach. C and F");
- Exhibit N: Declaration of Reeve Tyndall ("Tyndall Decl," Doc. No. 63-4), attaching one document ("Attach. A");
- Exhibit O: Biography of Lite DePalma Greenberg, LLC ("LDG, LLC Bio.," Doc. No. 63-5);
- Exhibit P: Biography of DiTommaso Lubin, P.C. ("DL Bio.," Doc. No. 63-6);
- Exhibit Q: Declaration of David Eden ("Eden Decl," Doc. No. 63-7);
- Exhibit R: Declaration of William R. James ("James Decl," Doc. No. 63-8); and
- Exhibit S: Order Denying Transfer in In re Lifewatch, Inc. Telephone Consumer Protection Act (TCPA) Litig., MDL No. 2653 (J.P.M.L. Oct. 13, 2015) (Doc. No. 63-9).

On December 28, 2015, Lifewatch filed an Opposition to Plaintiff's Motion. (Doc. No. 66.) In support of its Opposition, Lifewatch filed a declaration of its counsel Joseph Lipari ("Lipari Decl.," Doc. No. 66-1) and the following nine exhibits:

- Exhibit A: Declaration of Sarai Baker, ("Def. Baker Decl.," Doc. No. 66-2), attaching two documents ("Attach. 1 and 2");
- Exhibit B: Excerpts of a transcript of a September 28, 2015 deposition of Plaintiff ("Def. Donaca Depo. Excerpts," Doc. No. 66-3);
- Exhibit C: Excerpts of a transcript of a December 4, 2015 deposition of Diana Mey ("Mey Depo. Excerpts," Doc. No. 66-4);
- Exhibit D: Excerpts of a transcript of a December 2, 2015 deposition of Brick Kane ("Kane Depo. Excerpts," Doc. No. 66-5);
- Exhibit E: Excerpts of a transcript of a November 16, 2015 deposition of Leslie Steinmetz ("Steinmetz Depo. Excerpts," Doc. No. 66-6);
- Exhibit F: Declaration of Michael Hilgar ("Opp. Hilgar Decl.," Doc. No. 66-7);
- Exhibit G: Declaration of Evan Sirlin ("Sirlin Decl.," Doc. No. 66-8);
- Exhibit H: Order Denying Plaintiff State of Indiana's Motion for Partial Summary Judgment in State of Indiana v Elite Information Solutions, Inc., No. 49D06-1208-MI-032415 (Ind. Super. Apr. 1, 2015) (Doc. No. 66-9); and
- Exhibit I: A copy of a June 17, 2013 letter by Plaintiff to Sirlin ("Donaca Letter," Doc. No. 66-10).

On January 19, 2016, Plaintiff filed a Reply to Lifewatch's Opposition. (Doc. No. 67.) In support of his Reply, Plaintiff filed a supplemental declaration by his counsel Stephen J. Simoni ("Simoni Supp. Decl.," Doc. No. 67-1) and the following ten exhibits:

- Exhibit 1: Declaration of Sarai Baker, ("Pl. Baker Decl.," Doc. No. 67-2), attaching five exhibits ("Ex. A, B, C, F, and G");
- Exhibit 2: A copy of Plaintiff's "Calls Addendum" (Doc. No. 67-3);
- Exhibit 3: Declaration of Mirisasha A. Velez ("Velez Decl.," Doc. No. 67-4), attaching two documents ("Attach. B and E");

- <u>Exhibit 4:</u> Declaration of Joseph F. Einikis, III ("Einikis Decl.," Doc. No. 67-5), attaching one document ("Attach. A");
- <u>Exhibit 5:</u> Excerpts of a transcript of a hearing on a Motion for Preliminary Injunction in <u>FTC v. Lifewatch, Inc.,</u> No. 15-C-5781 (N.D. Ill.) (Doc. No. 67-6);
- <u>Exhibit 6:</u> A chart containing Plaintiff's responses to Lifewatch's factual contentions (Doc. No. 67-7);
- <u>Exhibit 7:</u> Declaration of Katrina Carroll ("Carroll Decl.," Doc. No. 67-8);
- <u>Exhibit 8:</u> Order and Permanent Injunction in <u>FTC v. Worldwide Info Servs., Inc., et al.,</u> No. 6:14-cv-08 (C.D. Fla. Nov. 13, 2014) (Doc. No. 67-9);
- <u>Exhibit 9:</u> Order and Permanent Injunction in <u>Live Agent Response 1, LLC, FTC v. Worldwide Info Servs., Inc., et al.,</u> No. 6:14-cv-08 (C.D. Fla. Mar. 6, 2015) (Doc. No. 67-10); and
- <u>Exhibit 10:</u> Declaration of Michael Hilgar ("Reply Hilgar Decl.," Doc. No. 67-11), attaching one document ("Attach. A").

On February 1, 2016, the Court held a hearing on the Motion and considered the arguments of Plaintiff's and Lifewatch's counsel.

## B. Factual Allegations in the SAC

Lifewatch markets and sells monitoring systems and services for use by medically compromised individuals in their homes. (SAC ¶ 1.) Plaintiff alleges that in 2013 he received multiple telephone solicitations at his residence from Lifewatch and the Doe Defendants that used a prerecorded voice and submitted false caller identification information. (<u>Id.</u> ¶ 13.) Specifically, Plaintiff contends he received five calls from Defendants between August and October 2013, which "solicit[ed] the sale of Defendants' Lifewatch product and monitoring system." (<u>Id.</u> ¶ 14.) These five calls had caller identification information which indicated the caller was "Platinum Svcs" or had no identifying information other than a phone number. (<u>Id.</u>) The message transmitted on each call was:

> Congratulations. You've been selected to receive a free medical emergency alert system. Senior Benefits is recommended by the American Diabetes Association. To receive your free system and be protected 24/7, press 1 now. Press 5 to be removed but press 1 now for your safety and peace of mind.

(<u>Id.</u>) Plaintiff contends he did not consent to receive these calls. (<u>Id.</u> ¶ 16.)

The SAC further contends that Lifewatch compensates the Doe Defendants, who are telemarketers that make the illegal telephone calls, for every sale of the Lifewatch product. (<u>Id.</u> ¶ 17.) Plaintiff claims Lifewatch paid the Doe Defendants despite its knowledge that the Doe Defendants place illegal calls and that complaints, lawsuits, and Federal Trade Commission proceedings have been filed regarding the illegal calls made to sell Lifewatch products. (<u>Id.</u>)

Plaintiff claims Defendants have violated the TCPA by: (1) failing to clearly state the identity of the business responsible for initiating the call; (2) failing to clearly state the telephone number of the business responsible for the call; (3) failing to transmit or blocking caller

identification information which includes the telephone number of the telemarketer and, when available, the name of the telemarketer; and (4) failing to provide the option to make a do-not-call request.  (Id. ¶¶ 18-29.)

Plaintiff brings this action on behalf of a class of all individuals who within the past four years: (i) received one or more robocalls from Defendants without express prior consent and in the absence of an emergency; and/or (ii) received one or more robocalls, sales calls, and/or combined robocalls/sales calls from Defendants in connection with which Defendants transmitted false caller identification information.  (Id. ¶ 30.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 23 ("Rule 23") governs the litigation of class actions.  A party seeking class certification must demonstrate the following prerequisites: "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citing Fed. R. Civ. P. 23(a)). The party may not rest on mere allegations; it must provide facts to satisfy those requirements. See Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1309 (9th Cir. 1977) (citing Gillibeau v. Richmond, 417 F.2d 426, 432 (9th Cir. 1969)).  Although not mentioned in Rule 23(a), the party seeking certification must also demonstrate that the class is ascertainable.  See Keegan v. Am. Honda Motor Co., Inc., 284 F.R.D. 504, 521 (C.D. Cal. 2012).

After satisfying the five prerequisites of numerosity, commonality, typicality, adequacy, and ascertainability, a party must also demonstrate one of the following: (a) a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice individual class members not parties to the action; (b) the defendant has treated the members of the class as a class, making appropriate injunctive or declaratory relief with respect to the class as a whole; or (c) common questions of law or fact predominate over questions affecting individual members and that a class action is a superior method for fairly and efficiently adjudicating the action. See Fed. R. Civ. P. 23(b)(1) to (3).

A trial court has broad discretion regarding whether to grant a motion for class certification.  See Bateman v. Am. Multi-Cinema, Inc., 623 F.3d 708, 712 (9th Cir. 2010). However, a party seeking class certification must affirmatively demonstrate compliance with Rule 23—that is, the party must be prepared to prove that there are in fact sufficiently numerous parties and common questions of law or fact.  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550-51 (2011).  A district court must conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim."  Id.

## III. DISCUSSION

### A. Proposed Class

In his Motion, Plaintiff requests certification of the following class ("Proposed Class"): "[a]ll individuals in the United States who received one or more phone calls directed to a telephone number assigned to a residential landline service using an artificial or prerecorded message made by, on behalf of, or for the benefit of Lifewatch from October 16, 2013 through the present."[2] (Mot. at 2.) Plaintiff moves to certify the Proposed Class on the theory that the phone calls directed to Proposed Class Members from October 16, 2013 to the present (the "Class Period") violated the TCPA, specifically 47 U.S.C.§ 227(b)(1)(B). (Id.) Plaintiff requests that the Court appoint him as Class Representative, and appoint Katrina Carroll of Lite DePalma Greenberg, LLC and Peter S. Lubin of DiTommaso Lubin P.C. as Co-Lead Counsel for the Proposed Class. (Id. at 1.)

### B. Law Applicable to Claims Underlying the Class

The TCPA prohibits persons from "initiat[ing] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party . . . ." 47 U.S.C. § 227(b)(1)(B). For violations thereof, the TCPA provides a private right of action for injunctive relief and monetary damages. Id. § 227(b)(3). As monetary damages, a plaintiff may receive either actual damages or statutory

---

[2] Lifewatch argues Plaintiff's definition of the Proposed Class differs from the class definition set forth in the SAC and argues the Court is bound to consider the class definition set forth in the SAC. (Opp. at 17-18.) In support, Lifewatch cites Costelo v. Chertoff, 258 F.R.D. 600, 604-05 (C.D. Cal. 2009), which held courts are "bound to class definitions provided in the complaint and, absent an amended complaint, will not consider certification beyond it." (Opp. at 17.) In response, Plaintiff cites a number of district court decisions permitting motions for class certification raising class definitions that differ from those stated in an operative pleading. See Mendez v. C-Two Grp., Inc., No. 13-CV-05914-HSG, 2015 WL 8477487, at *3 (N.D. Cal. Dec. 10, 2015) ("[C]ourts, including those in the Ninth Circuit, regularly allow class definitions to be adjusted over the course of a lawsuit.) (internal citation and quotation marks omitted); Brown v. Hain Celestial Grp., Inc., No. C 11-03082 LB, 2014 WL 6483216, at *6 (N.D. Cal. Nov. 18, 2014) (noting it would be inefficient to deny motion for class certification and require plaintiff to file amended complaint with new class definition).

The Court finds persuasive the authority cited by Plaintiff and considers whether the Proposed Class should be certified. Moreover, the Court notes Lifewatch has not shown how consideration of the new class definition set forth in the Motion would prejudice it. In fact, Lifewatch itself argues that the SAC's class definition would create problems because of changes in Federal Communications Commission regulations interpreting the TCPA that went into effect on October 16, 2013, during the timeframe encompassed by the SAC's definition. (Opp. at 17.) On the other hand, the Proposed Class is free of such problems because it is composed exclusively of persons who received phone calls after October 16, 2013. (See Mot. at 2.)

---

**CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk MG / Time: 00:25

damages in the amount of $500 per violation.  Id.  In cases of knowing or willful violations, statutory damages of up to $1,500 per violation may be awarded.  Id.

The FCC has clarified that vicarious liability is imposed "under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers."  In re Joint Petition Filed by Dish Network, LLC, 28 F.C.C. Rcd. 6574, 6574 (2013).

### C.  The Parties' Evidence

The parties have presented conflicting declarations and exhibits as to Lifewatch's involvement in the conduct giving rise to the SAC's claims.  The Court reviews such evidence below.

#### 1.  Plaintiff's Evidence

Plaintiff contends Lifewatch employed a number of third party telemarketing agencies to direct telephone calls toward Plaintiff and members of the Proposed Class using prerecorded messages.  (Mot. at 2-8.)  In support, Plaintiff presents declarations by Joseph Settecase, Leslie Steinmetz, Kenneth Gross, and Michael Hilgar.[3]  Settecase, Gross, and Hilgar claim to have been employed with various third party companies that did business with Lifewatch between 2011 and 2013, while Steinmetz was employed with Lifewatch from September 2009 to December 2012.  (Mot. Hilgar Decl. ¶ 4; Gross Decl. ¶¶ 4-5; Settecase Decl. ¶ 4; Steinmetz Decl. ¶ 3.)  In particular, Settecase and Hilgar claim to have worked for two telemarketing companies – Unique Information Services and Worldwide Info. Services, Inc., respectively – that engaged in business with Lifewatch.[4]  (Mot. Hilgar Decl. ¶ 5; Settecase Decl. ¶ 6.)  All four declarations aver Lifewatch directed third party telemarketing agencies to make telephone calls with prerecorded messages to consumers between 2011 and mid-2013, but do not speak to whether Lifewatch directed such calls during the Class Period.  Specifically, Unique Information Services would send phone calls with prerecorded messages to consumers: if, after listening to the messages, a consumer wanted more information, they could press a number on their telephone keypad and would be transferred to a call center staffed by Worldwide Info. Services, Inc. employees.  (Mot. Hilgar Decl. ¶ 5; Settecase Decl. ¶ 5.)  Any purchase orders made by the consumer would be administered by Lifewatch.  (Id.)  In addition, the declarations claim Lifewatch exercised substantial control over the third party telemarketing companies by, among other things, drafting

---

[3] Lifewatch presents a declaration by Hilgar contradicting Hilgar's claims in the declaration submitted by Plaintiff in support of his Motion.  (See Opp. Hilgar Decl. ¶¶ 5-10.)  In his Reply, Plaintiff responds with yet another declaration by Hilgar repudiating the declaration presented by Lifewatch and insisting he was paid by a third party to sign it.  (Reply Hilgar Decl. ¶¶ 4-8.)

[4] The documents submitted by the parties reflect that Worldwide Info. Services, Inc. was subject to numerous lawsuits for unlawful telemarketing activities in several jurisdictions in 2014 and 2015.  (See Simoni Supp. Decl., Ex. 5, 8, 9.)

and providing telemarketing scripts and requesting recordings of telemarketing calls.[5]  (Mot. Hilgar Decl. ¶¶ 5-6; Gross Decl. ¶¶ 9-10; Settecase Decl. ¶¶ 6-7; Steinmetz ¶ 6.)

Plaintiff also presents declarations by Paul deLoca, Federal Trade Commission investigator Reeve Tyndall, William R. James, and David Eden, which claim that, during the Class Period, each of these individuals repeatedly received phone calls with prerecorded messages from companies selling medical alert devices.  (deLoca Decl. ¶¶ 4-20; Tyndall Decl. ¶¶ 3-14; Eden Decl. ¶¶ 5-15; James Decl. ¶¶ 4-9.)  Upon receiving the message, these individuals often sought to speak to a customer representative and were informed on different occasions that the representative was employed with Lifewatch or another company, named "Rapid Response Alert," "Senior Life Support," or "Senior Alert."  (Id.)  Upon purchasing a product from the representative using a credit card, the individuals were informed the credit card would be charged by Lifewatch.  (Id.)  Plaintiff also cites his own testimony from a September 28, 2015 deposition that he also received such calls during the Class Period.  (Pl. Donaca Depo. Excerpts at 56-59, 62-63, 68-69, 70, 77.)

### 2.  Lifewatch's Evidence

In contrast, Lifewatch presents evidence suggesting it was not involved in any TCPA violations.  Lifewatch presents declarations by Lifewatch's Director of Operations Sarai Baker and Chief Executive Officer Evan Sirlin averring that Lifewatch does not make or initiate telemarketing calls or create, generate, or circulate recorded telephonic marketing messages. (Def. Baker Decl. ¶ 4; Sirlin Decl. ¶¶ 7-8.)  Moreover, these declarations acknowledge that Lifewatch did enter into "Purchase Agreements" with various "outside sales companies," such as Worldwide Info. Services, but that these outside companies only originated customer accounts (through telemarketing and other means) and offered to sell them to Lifewatch on a non-exclusive basis.[6]  (Def. Baker Decl. ¶¶ 6, 9; Sirlin Decl. ¶¶ 9-14.)  The declarations claim these outside companies are not within Lifewatch's control and often sell customer accounts to Lifewatch's competitors.  (Id.)  Hence, according to the declarations, Lifewatch would have no involvement in or records of any unlawful telephone calls initiated by these companies.  (Def. Baker Decl. ¶¶ 10-11.)  Moreover, Sirlin claims Lifewatch stopped doing business in 2013 with many of these companies when they were sued in Florida for telemarketing violations.  (Sirlin Decl. ¶ 18.)

---

[5] In support of the declarations' claims as to Lifewatch's control over its third party telemarketing companies, Plaintiff presents an unexecuted June 2012 "Telemarketing Services Agreement" between Lifewatch and Worldwide Info. Services, Inc.  (Bradley Decl., Attach. C.) According to the terms of the agreement, Worldwide Info. Services, Inc. would offer to consumers the opportunity to purchase Lifewatch's products, would use scripts approved by Lifewatch, and would record all telemarketing calls for Lifewatch's review.  (Id. ¶ 1.)  The agreement is not signed by Lifewatch.

[6] In support, Lifewatch attaches a template of this "Purchase Agreement" with outside sales companies.  (Def. Baker Decl., Attach 1.)

---

**D.  Ascertainability**

    **1.  Applicable Law**

        "In addition to the explicit requirements of Rule 23, an implied prerequisite to class certification is that the class must be sufficiently definite; the party seeking certification must demonstrate that an identifiable and ascertainable class exists."  Xavier v. Philip Morris USA Inc., 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011); see also Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc., 209 F.R.D. 159, 163 (C.D. Cal. 2002) ("Once an ascertainable and identifiable class has been defined, plaintiffs must show that they meet the four requirements of Rule 23(a), and the two requirements of Rule 23(b)(3).").  "Courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed."  Schwartz v. Upper Deck Co., 183 F.R.D. 672, 679-80 (S.D. Cal. 1999).  A class is ascertainable if it is "administratively feasible for the court to determine whether a particular individual is a member" using objective criteria.  Keegan, 284 F.R.D. at 521 (citation omitted).  The Court also notes that "[a] lack of ascertainability alone will generally not scuttle class certification."  Red v. Kraft Foods, No. CV 10-1028-GW (AGRx), 2012 WL 8019257, at *6 (C.D. Cal. Apr. 12 , 2012).

    **2.  The Parties' Contentions**

        Plaintiff argues the Proposed Class is ascertainable because class membership turns on objective criteria: namely, whether "an individual's residential telephone number was called by, on behalf of, or for the benefit of Lifewatch, using artificial or prerecorded messages, from October 16, 2013 to the present."  (Mot. at 12-13.)

        In response, Lifewatch responds that the Proposed Class is not ascertainable because Plaintiff has not established Lifewatch or any third party engaged in TCPA violations "on behalf of Lifewatch," according to the terms of the Proposed Class definition.  (Mot. at 10-18.)  Moreover, Lifewatch argues, Plaintiff has not presented any records that could identify members of the Proposed Class.  (Id. at 11.)  Lifewatch claims it does not have records of persons who received such calls because it "did not telemarket and did not exercise control over" third parties that engaged in telemarketing calls.  (Id. at 12.)  Rather, Lifewatch argues, "the only entities that could possibly know whether violative telemarketing calls were made, and to whom, if anyone, violative calls were made, are the third party vendors [who made such calls]" and such vendors are "now defunct."  (Id. at 11.)  Lifewatch contends Plaintiff has failed to show the Proposed Class is ascertainable because it has neither produced records of the recipients of such calls nor advanced any plan or methodology to retrieve such records.[7]  (Id. at 13.)

----

        [7] Lifewatch also appears to object to language in the class definition stating the Proposed Class includes individuals who received phone calls "for the benefit of Lifewatch."  (Opp. at 16.)  Lifewatch claims this portion of the definition is "in direct conflict with the TCPA."  (Id.)  Lifewatch claims "there is no liability for an entity under the TCPA solely by virtue of that entity *benefiting from* a sale made in connection with a telemarketing call . . .[,] as opposed to that (continued . . . )

### 3.   Analysis

The Court concludes Plaintiff has failed to present sufficient evidence demonstrating an ascertainable class, for two reasons.  First, Plaintiff has failed to submit evidence showing that an ascertainable class of persons received unlawful phone calls to numbers assigned to residential landline services during the Class Period.  Plaintiff has merely submitted declarations by several individuals, such as Paul deLoca, Federal Trade Commission investigator Reeve Tyndall, William R. James, and David Eden, who claim to have received such calls during the Class Period.  However, the declarations only establish that the declarants themselves received unlawful telephone calls during the Class Period: the declarations do not show any other individuals, let alone a class of such individuals, received such phone calls.  Plaintiff has failed to submit evidence demonstrating any other individuals received unlawful phone calls during the Class Period, as set forth in the Proposed Class definition.  Moreover, Plaintiff has not proposed any feasible method by which to identify such individuals.  See Birchmeier v. Caribbean Cruise Line, Inc., 302 F.R.D. 240, 248 (N.D. Ill. 2014) (approving use of self-identifying affidavits and phone records to ascertain class of individuals allegedly called by defendants in violation of TCPA).  As a result, the Court concludes Plaintiff has not met his burden of showing an ascertainable class.

Second, even assuming Plaintiff were to demonstrate that a class of individuals received phone calls in violation of the TCPA, Plaintiff has not provided any evidence showing these calls were made "by, on behalf of, or for the benefit of Lifewatch."  The declarations by Settecase, Steinmetz, Gross, and Hilgar constitute the only direct evidence presented by Plaintiff showing Lifewatch or its agents at any time made unlawful telephone calls for Lifewatch's benefit.  However, as noted previously, the declarations do not make clear whether these unlawful phone calls were made during the Class Period.

Plaintiff also presents circumstantial evidence that Lifewatch was somehow involved in directing phone calls with prerecorded messages during the Class Period, in violation of the TCPA.  For instance, deLoca, Tyndall, James, and Eden's declarations allege that after receiving such phone calls, they chose to speak to customer representatives.  According to the declarations, deLoca, Tyndall, James, and Eden were told by customer representatives that: (1) any credit cards they used to purchase medical products would be charged by Lifewatch; and (2) the representatives themselves were employed by Lifewatch.  (deLoca Decl. ¶¶ 4-20; Tyndall Decl.

---

( . . . continued)
entity initiating the call or the call being made on behalf of that entity."  (Opp. at 17) (emphasis in original.)

Lifewatch's argument is meritless.  The Federal Communications Commission has concluded that a person is liable for violations of the TCPA personally or vicariously based on federal common law principles of agency.  See In re Joint Petition Filed by Dish Network, LLC, 28 F.C.C. Rcd. 6574, 6584 (2013).  The Commission has recognized that the phrase "for the benefit of," "easily can be read to encompass common law agency principles."  Id.  Hence, the class definition's use of the phrase "for the benefit of" is not inconsistent with the scope of liability for violations of the TCPA.

¶¶ 3-14; Eden Decl. ¶¶ 5-15; James Decl. ¶¶ 4-9.)  While such facts suggest Lifewatch had some connection to the customer representatives, it is unclear whether Lifewatch or its agents placed the initial phone calls containing prerecorded messages.  In short, because of the absence of clear evidence showing Lifewatch or its agents directed these calls for Lifewatch's benefit to individuals during the Class Period, the Court concludes Plaintiff has failed to demonstrate an ascertainable class.

The Court next turns to discuss the Rule 23 requirements.  The ascertainability issues just identified are closely tied to deficiencies in demonstrating numerosity, commonality, and typicality.

### E.  Rule 23(a)

#### 1.  Numerosity

Rule 23(a)(1) requires the class to be so numerous that joinder of individual class members is impracticable.  See Fed. R. Civ. P. 23(a)(1).  Additionally, there is no particular number cut-off, as the specific facts of each case may be examined.  Ballard v. Equifax Check Servs., Inc., 186 F.R.D. 589, 594 (E.D. Cal. 1999).  Courts have not required evidence of exact class size or the identities of class members to satisfy the requirements of Rule 23(a)(1).  See Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993).

As noted, Plaintiff has submitted little to no evidence to establish the existence of the Proposed Class.  As a result, Plaintiff has failed to demonstrate numerosity.  Plaintiff cites a number of figures in support of his contention that the Proposed Class is sufficiently numerous to permit certification.  For instance, Plaintiff cites an estimate by a telemarketer's agent, Jason, in a November 2014 telephone conversation with call recipient Diana Myers that the telemarketer called 10,000 individuals a day with prerecorded messages.  (Mot. at 2-3 (citing Menjivar Decl., Att. XX at 20:13-24).)  However, it is unclear from the conversation to what extent, if any, the telemarketer was acting "for the benefit of" Lifewatch.  Earlier in the conversation, Jason's employee Michael stated the telemarketer was "Senior Life Savers" and was not associated with Lifewatch.  (Menjivar Decl., Att. XX at 11-12.)  Moreover, Plaintiff's evidence does not establish that a company named "Senior Life Savers" ever served as an agent for Lifewatch.  In short, it is unclear whether the 10,000 daily calls noted by Jason were sent out to Proposed Class Members because Plaintiff has not established the calls were made "for the benefit of" Lifewatch.

Plaintiff also cites the declaration of Joseph Settecase, who avers that his company, Unique Information Services ("Unique"), began assisting Lifewatch with calling consumers with prerecorded messages regarding medical alert devices in 2011.  (Settecase Decl. ¶¶ 4-6.)  According to Settecase, at its peak, Unique assisted Lifewatch in sending out "nearly two million calls a day, six days a week, to consumers."  (Id. ¶ 7.)  Plaintiff claims this "two million" figure demonstrates that the numerosity requirement has been satisfied here.  (Mot. at 3.)  However, the declaration does not make clear when this "peak" occurred or whether Unique and Lifewatch called consumers with prerecorded messages during the Class Period (i.e. October 2013).  The declaration only states that Unique began assisting Lifewatch at some unspecified time in 2011.  Absent further details, it is unclear whether Unique and Lifewatch even made calls with

prerecorded messages to consumers during the Class Period, much less whether the number of consumers called satisfies the numerosity requirement.

Accordingly, the Court finds Plaintiff has not presented sufficient evidence to satisfy the numerosity requirement.

### 2. Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Wolin v. Jaguar Land Rover North Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Ellis, 657 F.3d at 984 (quoting Hanon, 976 F.2d at 508). Thus typicality is generally satisfied if the plaintiff's claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. Moreover, satisfying the typicality prong requires, in the least, that "a class representative must be part of the class." General Telephone Co. of Sw. v. Falcon, 457 U.S. 147, 156 (1982).

Plaintiff asserts typicality is satisfied because his TCPA claim arises from the same alleged course of conduct by Lifewatch as members of the Proposed Class: namely, unauthorized telephone calls by or for the benefit of Lifewatch containing prerecorded messages. (Mot. at 17-18.) However, Plaintiff has failed to present evidence showing whether or how Proposed Class Members received such calls, which prevents a determination of whether Plaintiff's claims are typical of those of Proposed Class Members. Hence, the Court concludes the typicality requirement is not satisfied here.

### 3. Commonality

Courts have construed Rule 23(a)(2)'s commonality requirement permissively. See Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Jimenez v. Allstate Ins. Co., 765 F.3d 1161, 1165 (9th Cir. 2014) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998)). Nevertheless, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law." Dukes, 131 S. Ct. at 2551 (citation omitted). The "claims must depend on a common contention" and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. The common question or questions must also be "apt to drive the resolution of the litigation," which turns on the nature of the underlying legal claims in the case. Jimenez, 765 F.3d at 1165 (quoting Abdullah v. U.S. Sec. Associates, Inc., 731 F.3d 952, 962 (9th Cir. 2013)). Thus commonality requires an understanding of the nature of the underlying claims. Id. (citing Parsons v. Ryan, 754 F.3d 657, 676 (9th Cir. 2014)).

Here, as with typicality, the Court concludes Plaintiff has not shown commonality because he has presented insufficient evidence as to whether or how Proposed Class Members received calls by or for the benefit of Lifewatch, in violation of the TCPA.  Absent such information, it is unclear whether Proposed Class Members' claims would be so similar that they could all be disposed of in a "single stroke."  <u>See</u> <u>Dukes</u>, 131 S. Ct. at 2551 (citation omitted). Accordingly, the Court concludes the commonality requirement is not satisfied here.

Accordingly, because the Court concludes Plaintiff fails to satisfy three of the four Rule 23(a) requirements, the Court DENIES Plaintiff's Motion, without prejudice.[8]

## IV.  CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's Motion for Class certification without prejudice.

**IT IS SO ORDERED.**

---

[8] Because the Court concludes Plaintiff has not satisfied the numerosity, typicality, and commonality requirements under Rule 23(a), the Court does not address whether Plaintiff can adequately protect the interests of the Proposed Class under Rule 23(a)(4) or whether Plaintiff has met Rule 23(b)'s requirements.