# PX 5

**DECLARATION OF ROBERTO C. MENJIVAR**
**PURSUANT TO 28 U.S.C. § 1746**

I, Roberto C. Menjivar, hereby declare as follows:

1. My name is Roberto C. Menjivar. I am a United States citizen and over eighteen years of age. I am employed as an investigator with the Federal Trade Commission ("FTC" or "Commission"), a position that I have held for over eleven years. My office address is 55 West Monroe Street, Suite 1825, Chicago, Illinois 60603. I have personal knowledge of the facts stated in this declaration, and if called as a witness, I would testify to the same.

2. As an FTC investigator, my duties include monitoring and investigating parties who are suspected of engaging in deceptive and unfair acts or practices in violation of Section 5(a) of the Federal Trade Commission Act (FTC Act), and other laws or rules enforced by the FTC, including the Telemarketing Sales Rule, 16 C.F.R. Part 310. As part of those duties, I interview victims and other witnesses. I also gather information and review documents, financial records, and other evidence in connection with FTC investigations and federal court litigation. I am also a custodian of documents and records obtained by the FTC during the course of investigations to which I am assigned.

3. In the course of my employment, I participated in the FTC's investigation of Lifewatch, Inc. (Lifewatch), and Evan Sirlin. Throughout this declaration, I collectively refer to these parties as "Lifewatch Defendants."

4. As part of the FTC's investigation of Lifewatch Defendants, pursuant to Section 20 of the FTC Act, 15 U.S.C. § 57b-1, the FTC issued Civil Investigative Demands (CIDs) to parties having information relevant to this investigation, including Lifewatch. I am the custodian of the documents and records produced in response to those CIDs.

5. I previously participated in the FTC's investigation of Worldwide Info Services, Inc., and related entities and individuals (Worldwide Defendants). On January 6, 2014, the FTC, along with the State of Florida, Office of the Attorney General (Florida AG), filed their Complaint for Permanent Injunction and Other Equitable Relief. On the same day, the FTC and the Florida AG filed their *Ex Parte* Motion for Temporary Restraining Order with Asset Freeze, Appointment of a Receiver, Other Equitable Relief, and an Order to Show Cause Why a Preliminary Injunction Should Not Issue, which the Court subsequently granted on January 7, 2014. *FTC v. Worldwide Info Servs. Inc.*, Case No. 6:14-cv-8-CEM-DAB (M.D. Fla., filed Jan. 6, 2014). I refer to this case as the "Worldwide Litigation."

6. Throughout this declaration and in its attachments, information that would reveal personally identifiable information or sensitive health information has been redacted.

## WORLDWIDE LITIGATION

### Immediate Access

7. The *ex parte* temporary restraining order obtained in the Worldwide Litigation, among other things, appointed a receiver over the corporate defendants. On January 9, 2014, FTC and Florida AG staff were present when the court-appointed Temporary Equity Receiver, Robb Evans & Associates LLC (Receiver), and the Receiver's representatives took possession and control of the Worldwide Defendants' business premises (Immediate Access) located at 474 South Northlake, Suite 1024, Altamonte Springs, Florida 32701 (Northlake Office), and the business premises located at 435 Douglas Avenue, Suites 2105, 2205, and 2305, Altamonte Springs, Florida 32714 (Douglas Office). After the Receiver and the Receiver's representatives secured both of the business premises and pursuant to the temporary restraining order, FTC and Florida AG staff were permitted to enter the premises for the purpose of inspecting and copying

the documents and records of the corporate defendants. FTC contractors also imaged computers, servers, hard drives, and other media types at both of the business premises.

8. The Northlake Office consisted of an office suite with nine main areas (either open or closed offices). Staff and I labeled rooms within the suite numerically. We labeled the desks, work stations, file cabinets, tables, and other areas within the rooms alphabetically. This labeling method or system was used to properly identify the location of evidence discovered during the Immediate Access at the Northlake Office.

9. The Douglas Office was located in a commercial office building with multiple suites and offices. The Worldwide Defendants occupied three suites (Suites 2105, 2205, and 2305), and each suite had multiple rooms.

10. When inspecting and copying hard copy documents at both of these Immediate Access locations, FTC staff adhered to the following protocol: (1) remove the original document from its location; (2) place an FTC "Document Removal Inventory" sheet on the original document, and indicate on the "Document Removal Inventory" sheet where the document was originally located, using the lettering and numbering system discussed above, and sometimes including a brief description of the document; (3) make a photocopy of the original document; and (4) return the original document to the Temporary Equity Receiver or place it back in the location from which it was removed.

11. FTC staff used a third party vendor to copy the selected documents and to assign a bates number to each page. For the documents copied from the Northlake Office, the bates number assigned to these pages ranged from FTC-WIS-S1-00000001 to FTC-WIS-S1-00002424. For the documents copied from the Douglas Office, the bates number assigned to these pages ranged from FTC-WIS-S2-00000001 to FTC-WIS-S2-00008927.

***Documents Obtained from the Northlake Office***

12. FTC and Florida AG staff found various documents at the Northlake Office. Attached hereto as **Menjivar Attachment A** are true and correct copies of some of the documents found at the Worldwide Defendants' Northlake Office.

***Documents Obtained from the Douglas Office***

13. FTC and Florida AG staff found various documents at the Douglas Office. Attached hereto as **Menjivar Attachment B** are true and correct copies of some of the documents found at the Worldwide Defendants' Douglas Office.

***Electronic Documents***

14. During the Immediate Access, FTC contractors imaged 31 hard drives and other media types from 21 computers and servers located at the Worldwide Defendants' Northlake Office and Douglas Office.

15. The FTC contractors provided the imaged material to FTC staff. FTC staff reviewed files from some of the imaged devices described above. Attached hereto as **Menjivar Attachment C** are true and correct copies of some of the email correspondence obtained from these files.

**Third Party Subpoena Responses in the Worldwide Litigation**

16. During the Worldwide Litigation, FTC issued subpoenas to certain third parties. On August 5, 2014, the FTC issued a subpoena to CFM Data Network, LLC (CFM Data). According to its website, CFM Data is a marketing company that offers various sales leads, mailing lists, and other types of marketing lists for purchase, including: (1) residential lists; (2) business lists; (3) debt leads; (4) mortgage leads; (5) lists by interests; and (6) industry specific

lists. On or about August 22, 2014, pursuant to the subpoena, the FTC received documents and materials from CFM Data.

17. Attached hereto as **Menjivar Attachment D** is a true and correct copy of a letter dated August 22, 2014, from CFM Data, and a certification of records of regularly conducted activity signed on August 22, 2014. In the letter, CFM Data describes the consumer lists purchased by the Worldwide Defendants: "[L]ists purchased by Defendants were general consumer lists. No one on the lists had opted in for any prerecorded telemarketing calls. The customer knew when he purchased the lists they were not DNC scrubbed, and it was their obligation to follow all applicable rules and regulations." (*Id.* at 1.)

18. Attached hereto as **Menjivar Attachment E** is a true and correct copy of an invoice dated August 15, 2013, from CFM to Worldwide Defendant Michael Hilgar for a "Senior Database."

19. On or about August 26, 2013, pursuant to a CID issued in the Worldwide Litigation, the FTC received documents from Electronic Payments Inc. Electronic Payments is a payment processor. Documents produced by Electronic Payments include information related to various companies, including Lifewatch Inc., Harmonious Enterprises Inc., and Quick Response Alert LLC.

20. Attached hereto as **Menjivar Attachment F** is a true and correct copy of the Merchant Application for Lifewatch obtained from Electronic Payments. This application shows, among other things:

a. Lifewatch's legal and outlet addresses were listed as 266 Merrick Road, Lynbrook, New York 11563. Lifewatch's customer service telephone number

was listed as 1-800-716-1433, and its dba location telephone number was 516-405-4595;

b. Paule Oliveri was listed as the contact name for Lifewatch;

c. Evan Sirlin was listed as the President of Lifewatch, and signed the application on February 28, 2013;

d. Lifewatch stated that it provides Medical Alarm and Alert System; and

e. Lifewatch claimed gross yearly sales of $15,206,997.

21. Attached hereto as **Menjivar Attachment G** is a true and correct copy of the Merchant Application for Harmonious Enterprises Inc. (Harmonious Enterprises) obtained from Electronic Payments. This application shows, among other things:

a. Harmonious Enterprises's address was listed as 37 W. 47th Street, New York, New York 10036, and telephone number was listed as 1-800-716-1433;

b. Harmonious Enterprises was doing business as Home Health Alert, its outlet address was listed as 266 Merrick Road, Lynbrook, New York 11563, and its dba location telephone number was listed as 516-405-4595;

c. Paule Oliveri was listed as the contact name for Harmonious Enterprises;

d. Hing Tack Chen was listed as the President of Harmonious Enterprises, and signed the application on July 15, 2013;

e. Harmonious Enterprises stated that it provides Personal Emergency Response Systems; and

f. Harmonious Enterprises claimed gross yearly sales of $1,925,000.

22. Attached hereto as **Menjivar Attachment H** is a true and correct copy of the Merchant Application for Quick Response Alert LLC (Quick Response) obtained from Electronic Payments. This application shows, among other things:

a. Quick Response's legal and outlet addresses were listed as 266 Merrick Road, Suite 106, Lynbrook, New York 11563. Quick Response's customer service telephone number was listed as 855-885-3689, and its dba location telephone number was listed as 516-405-4595;

b. Paule Oliveri was listed as the contact name for Quick Response;

c. Hing Tack Chen was listed as the Managing Member of Quick Response, and signed the application on May 8, 2013;

d. Quick Response stated that it provides Medical Alert Bracelets and Service; and

e. Quick Response claimed gross yearly sales of $1,200,000.

**LIFEWATCH CIVIL INVESTIGATIVE DEMAND**

23. On March 12, 2014, the FTC issued a CID for Production of Documents and Answers to Written Interrogatories to Lifewatch. On or about March 24, 2014, April 2, 2014, April 14, 2014, April 28, 2014, May 5, 2014, May 8, 2014, May 13, 2014, and June 5, 2014, pursuant to the CID, the FTC received responses from Lifewatch. The documents and materials produced by Lifewatch are bates-labeled "FTC00001" through "FTC09262." Attached hereto as **Menjivar Attachments I** through **V** are some of the documents Lifewatch produced to the FTC.

24. Attached hereto as **Menjivar Attachment I** are true and correct copies of a "Preliminary Statement," dated April 14, 2014, and correspondence from Lifewatch's counsel, dated April 28, 2014, May 5, 2014, and, June 5, 2014.

25. Lifewatch's response to the FTC's CID included correspondence and documents indicating that Lifewatch responded to several state law enforcement or government agencies about its practices. Attached hereto as **Menjivar Attachment J** is a true and correct copy of a letter from Evan Sirlin to the Minnesota Attorney General's Office. Based on this letter, Evan Sirlin appears to be responding to a complaint against Lifewatch made by a Minnesota consumer.

26. Attached hereto as **Menjivar Attachment K** is a true and correct copy of "Lifewatch Inc.'s Response to Civil Investigative Demand Pursuant to 9 V.S.A. § 2460," in which Lifewatch appears to be responding to a CID from the State of Vermont, Office of the Attorney General. Evan Sirlin signed the "Certificate of Compliance," dated February 13, 2014. (*Id.* at 11.)

27. Attached hereto as **Menjivar Attachment L** is a true and correct copy of a letter dated August 8, 2013, from The State of Connecticut, Department of Consumer Protection, to Evan Sirlin. The letter references an "Investigative Demand under Connecticut's Unfair Trade Practices Act," a copy of which follows the letter. (*Id.* at 2.)

28. Attached hereto as **Menjivar Attachment M** is a true and correct copy of an "Organizational Chart" that Lifewatch produced to the FTC. This chart lists Evan Sirlin as the President of Lifewatch.

29. Attached hereto as **Menjivar Attachment N** is a true and correct copy of what appears to be a transcript of a conversation between a Lifewatch seller and a consumer. At one point in the conversation, the person identified as "Sales," says: "It adds up to $300 and some dollars, but if you don't want it, you can ship it back at no cost. If you ship it back, you tired of

it; if you feel like you're tired of it and you just don't want it no more, you can ship it back with no problem and no cost." (*Id.* at 2.)

30. Attached hereto as **Menjivar Attachment O** are true and correct copies of some of the email correspondence that Lifewatch produced to the FTC.

31. Attached hereto as **Menjivar Attachment P** is a true and correct copy of what appears to be a letter from Lifewatch to its customers. Among other things, the letter provides information about the Worldwide Litigation.

32. Lifewatch produced to the FTC numerous agreements between Lifewatch and third parties. Attached hereto as **Menjivar Attachment Q** is a true and correct copy of a "Telemarketing Services Agreement" dated September 24, 2012, between Lifewatch and MD247.com, Inc., which is referred to as a Florida telemarketer in the agreement. The agreement appears to be signed by Evan Sirlin.

33. Attached hereto as **Menjivar Attachment R** is a true and correct copy of a "Multi-Media Marketing Services Agreement" dated October 25, 2012, between Lifewatch and Platinum Marketing Group, LLC. The agreement appears to be signed by Evan Sirlin.

34. Attached hereto as **Menjivar Attachment S** is a true and correct copy of a "Purchase Agreement" dated March 18, 2014, between Lifewatch and Payless Solutions Inc.

35. Attached hereto as **Menjivar Attachment T** is a true and correct copy of a "Purchase Agreement" dated May 1, 2013, between Lifewatch and Life One Wireless, LLC. Section 4.6, titled "Exclusive Relationship," of this purchase agreement states that Life One Wireless, "shall not sell PERS units to any other entity other than Lifewatch or such company as designated by Evan Sirlin in writing." (*Id.* at 5.)

36. Attached hereto as **Menjivar Attachment U** is a true and correct copy of a "Purchase Agreement" dated March 26, 2014, between Lifewatch and QCSS, Inc. QCSS's business address is listed on the purchase agreement as 21925 Field Parkway, Suite 210, Deer Park, Illinois 60010.

37. Attached hereto as **Menjivar Attachment V** are true and correct copies of the "Profit & Loss" statements for 2011, 2012, 2013, and January through August of 2014 that Lifewatch produced to the FTC.

**TRANSCRIPTS OF CONSUMER TELEPHONE CALLS**

38. As explained in their declarations filed concurrently herewith, consumers Paul deLoca (Plaintiffs' Exhibit (PX) 31), William James (PX 41), and Diana Mey (PX 50) provided FTC staff with recordings of telephone calls. I requested and obtained transcripts of some of these recorded telephone calls made by Paul deLoca, William James, and Diana Mey. The transcripts were prepared according to the following procedures. I copied the audio recordings or files to a blank recordable disc. I finalized the disc to prevent further recordings. I then sent the discs to For The Record, Inc. (FTR). FTR is a private court reporting company. FTR transcribed the recordings and sent the transcripts to me. I verified the accuracy of the transcript by comparing it to the original recording. If I found any errors in the transcripts, I noted the corrections directly on the transcripts and resubmitted them to FTR for revision. FTR then sent me the revised transcripts, and I concluded the transcripts were true and correct reports of the audio recordings.

39. Attached hereto as **Menjivar Attachments W** through **Z** are true and correct copies of transcripts of recordings provided to the FTC by Paul deLoca.

   a. Attached hereto as **Menjivar Attachment W** is a true and correct copy of the transcript of a July 27, 2013, recorded telephone call to Paul deLoca from telephone number 910-420-0106. (deLoca Dec., PX 31 ¶ 7.)

   b. Attached hereto as **Menjivar Attachment X** is a true and correct copy of the transcript of a November 1, 2013, recorded telephone call to Paul deLoca from telephone number 323-281-1572. (*Id.* at ¶ 9.)

   c. Attached hereto as **Menjivar Attachment Y** is a true and correct copy of the transcript of a July 18, 2014, recorded telephone call to Paul deLoca from telephone number 212-662-5375. (*Id.* at ¶ 13.)

   d. Attached hereto as **Menjivar Attachment Z** is a true and correct copy of the transcript of a December 23, 2014, recorded telephone call to Paul deLoca from telephone number 410-985-6570. (*Id.* at ¶ 15.)

40. Attached hereto as **Menjivar Attachments AA** through **FF** are true and correct copies of transcripts of recordings provided to the FTC by William R. James.

   a. Attached hereto as **Menjivar Attachment AA** is a true and correct copy of the transcript of a November 25, 2014, recorded telephone call to William James from telephone number 307-541-8998. (James Dec., PX 41 at ¶ 4.)

   b. Attached hereto as **Menjivar Attachment BB** is a true and correct copy of the transcript of a November 26, 2014, recorded telephone call to William James from telephone number 800-615-8364. (*Id.* at ¶ 5.)

c. Attached hereto as **Menjivar Attachment CC** is a true and correct copy of the transcript of a November 28, 2014, recorded telephone call to William James from telephone number 800-615-8364. (*Id.* at ¶ 6.)

d. Attached hereto as **Menjivar Attachment DD** is a true and correct copy of the transcript of a January 30, 2015, recorded telephone call to William James from telephone number 320-376-5238. (*Id.* at ¶ 7.)

e. Attached hereto as **Menjivar Attachment EE** is a true and correct copy of the transcript of a February 13, 2015, recorded telephone call to William James from telephone number 410-985-6570. (*Id.* at ¶ 8.)

f. Attached hereto as **Menjivar Attachment FF** is a true and correct copy of the transcript of a February 28, 2015, recorded telephone call to William James from telephone number 843-710-9764. (*Id.* at ¶ 9.)

41. Attached hereto as **Menjivar Attachments GG** through **CCC** are true and correct copies of transcripts of recordings provided to the FTC by Diana Mey.

a. Attached hereto as **Menjivar Attachment GG** is a true and correct copy of the transcript of a September 9, 2014, recorded telephone call to Diana Mey from telephone number 307-316-7473. (Mey Dec., PX 50 at ¶ 6.)

b. Attached hereto as **Menjivar Attachment HH** is a true and correct copy of the transcript of a September 9, 2014, recorded telephone call to Diana Mey from telephone number 855-796-7524. (*Id.* at ¶ 7.)

c. Attached hereto as **Menjivar Attachment II** is a true and correct copy of the transcript of a September 18, 2014, recorded telephone call from Diana Mey to telephone number 855-796-7524. (*Id.* at ¶ 8.)

d. Attached hereto as **Menjivar Attachment JJ** is a true and correct copy of the transcript of a September 27, 2014, recorded telephone call to Diana Mey from telephone number 708-529-4774. (*Id.* at ¶ 10.)

e. Attached hereto as **Menjivar Attachment KK** is a true and correct copy of the transcript of a September 27, 2014, recorded telephone call to Diana Mey from telephone number 360-322-1124. (*Id.* at ¶ 11.)

f. Attached hereto as **Menjivar Attachment LL** is a true and correct copy of the transcript of a September 27, 2014, recorded telephone call to Diana Mey from telephone number 855-796-7524. (*Id.* at ¶ 12.)

g. Attached hereto as **Menjivar Attachment MM** is a true and correct copy of the transcript of a September 27, 2014, recorded telephone call to Diana Mey from telephone number 855-796-7524. (*Id.* at ¶ 13.)

h. Attached hereto as **Menjivar Attachment NN** is a true and correct copy of the transcript of an October 3, 2014, recorded telephone call to Diana Mey from telephone number 708-529-4774. (*Id.* at ¶ 15.)

i. Attached hereto as **Menjivar Attachment OO** is a true and correct copy of the transcript of an October 3, 2014, recorded telephone call to Diana Mey from telephone number 855-796-7524. (*Id.* at ¶ 16.)

j. Attached hereto as **Menjivar Attachment PP** is a true and correct copy of the transcript of an October 14, 2014, recorded telephone call to Diana Mey from telephone number 303-465-2218. (*Id.* at ¶ 21.)

k. Attached hereto as **Menjivar Attachment QQ** is a true and correct copy of the transcript of an October 14, 2014, recorded telephone call to Diana Mey from telephone number 360-322-1124. (*Id.* at ¶ 22.)

l. Attached hereto as **Menjivar Attachment RR** is a true and correct copy of the transcript of an October 27, 2014, recorded telephone call to Diana Mey from telephone number 757-644-3695. (*Id.* at ¶ 23.)

m. Attached hereto as **Menjivar Attachment SS** is a true and correct copy of the transcript of an October 27, 2014, recorded telephone call to Diana Mey from telephone number 855-849-1855. (*Id.* at ¶ 24.)

n. Attached hereto as **Menjivar Attachment TT** is a true and correct copy of the transcript of an October 31, 2014, recorded telephone call to Diana Mey from telephone number 757-644-3695. (*Id.* at ¶ 25.)

o. Attached hereto as **Menjivar Attachment UU** is a true and correct copy of the transcript of an October 31, 2014, recorded telephone call to Diana Mey from telephone number 855-849-1855. (*Id.* at ¶ 26.)

p. Attached hereto as **Menjivar Attachment VV** is a true and correct copy of the transcript of a November 6, 2014, recorded telephone call from Diana Mey to telephone number 800-716-1433. (*Id.* at ¶ 28.)

q. Attached hereto as **Menjivar Attachment WW** is a true and correct copy of the transcript of a November 19, 2014, recorded telephone call to Diana Mey from telephone number 515-207-3384. (*Id.* at ¶ 29.)

r. Attached hereto as **Menjivar Attachment XX** is a true and correct copy of the transcript of a November 19, 2014, recorded telephone call to Diana Mey from telephone number 352-535-8784. (*Id.* at ¶ 30.)

s. Attached hereto as **Menjivar Attachment YY** is a true and correct copy of the transcript of a December 4, 2014, recorded telephone call to Diana Mey from telephone number 800-716-1433. (*Id.* at ¶ 31.)

t. Attached hereto as **Menjivar Attachment ZZ** is a true and correct copy of the transcript of a January 5, 2015, recorded telephone call to Diana Mey from telephone number 651-388-4121. (*Id.* at ¶ 32.)

u. Attached hereto as **Menjivar Attachment AAA** is a true and correct copy of the transcript of a January 5, 2015, recorded telephone call to Diana Mey from telephone number 918-570-5402. (*Id.* at ¶ 33.)

v. Attached hereto as **Menjivar Attachment BBB** is a true and correct copy of the transcript of a January 8, 2015, recorded telephone call to Diana Mey from telephone number 800-615-8364. (*Id.* at ¶ 34.)

w. Attached hereto as **Menjivar Attachment CCC** is a true and correct copy of the transcript of a January 13, 2015, recorded telephone call to Diana Mey from telephone number 607-900-1973. (*Id.* at ¶ 35.)

**VRI, INC.**

42. In or around March 2015, VRI, Inc. (VRI) voluntarily provided the FTC with documents relating to Lifewatch. According to VRI Chief Executive Officer Christopher Hendrikson, VRI provides home medical monitoring solutions and offers a variety of medical monitoring products, including medical alert devices. (Hendrikson Dec., PX 12.) VRI has

worked with Lifewatch since approximately 2008, and it has provided monitoring services for some of Lifewatch's customers. (*Id.* at ¶ 14.)

43. Attached hereto as **Menjivar Attachment DDD** are true and correct copies of some of the email correspondence, contracts, and agreements that VRI provided to the FTC.

**DOCUMENTS FROM LIFE ALERT**

44. On or about May 8, 2015, Ralph C. Loeb, counsel for Life Alert Emergency Response, Inc. (Life Alert), provided the FTC with documents relating to Life Alert's case against Lifewatch.

45. Attached hereto as **Menjivar Attachment EEE** are true and correct copies of some of the correspondence between counsel for Life Alert and Lifewatch that Life Alert provided to the FTC.

46. Attached hereto as **Menjivar Attachment FFF** is a true and correct copy of the Helen Odell declaration dated July 3, 2014, that Life Alert provided to the FTC.

47. Attached hereto as **Menjivar Attachment GGG** is a true and correct copy of the Jeanette H. Barbee declaration dated July 28, 2014, that Life Alert provided to the FTC.

48. Attached hereto as **Menjivar Attachment HHH** is a true and correct copy of the Alan R. Speelman declaration dated September 20, 2014, that Life Alert provided to the FTC.

**LIFEWATCH-USA.COM**

49. On June 3, 2015, using an FTC computer, I accessed the publicly available website www.lifewatch-usa.com. The "Contact Us" page indicates that Lifewatch USA has a regional office in Illinois. It also listed Lifewatch's telephone numbers as 888-650-6837, and 800-716-1433. Attached hereto as **Menjivar Attachment III** is a true and correct printout of the "Contact Us" page from the Lifewatch website that I captured on June 3, 2015.

50. On June 25, 2013, using an FTC computer, I accessed the publicly available website www.lifewatch-usa.com. On the "Medical Alarm Plans & Pricing" page, I clicked on a link titled "Order." After I clicked on the "Order" link, I was redirected to a page titled "Lifewatch USA Medical Alarm Service Order Form" (Order Form). On the Order Form, I clicked on a link titled "Terms and Conditions." After I clicked on the Terms and Conditions link, I was redirected to a page titled "Lifewatch Subscriber Agreement." Attached hereto as **Menjivar Attachment JJJ** is a true and correct printout of the "Lifewatch Subscriber Agreement" page of the Lifewatch website that I captured on June 25, 2013. On paragraph four of the agreement it states, "If you receive this package but do not activate this system for any reason, you are still responsible for a $50 restock fee." (*Id.* at 1-2.) It also states that the customer's "account will continue to be billed at the monthly monitoring fee . . . . until our equipment is returned in good working order." (*Id.* at 2.)

**CONSUMER SENTINEL**

51. The FTC maintains the Consumer Sentinel database. Consumer Sentinel is a database of complaints received from consumers, directly or through law enforcement agencies, U.S. federal agencies, state agencies, local agencies, foreign agencies, and other organizations. The Consumer Sentinel database and the information contained in the Consumer Sentinel are for law enforcement purposes.

52. Consumer Sentinel includes consumer complaints involving the following issues: (1) Do Not Call; (2) General Fraud; (3) Identity Theft; and (4) Spam. Generally, before consumers can file a Do Not Call (DNC) complaint, their telephone numbers must be registered on the National Do Not Call Registry (National Registry) for 31 days before they received an unwanted telemarketing call. Consumers can also file a complaint if they received a

telemarketing call that used a pre-recorded message (also known as a "robocall") instead of a live person whether or not their telephone numbers are registered with the National Registry.

53. On May 20, 2015, I requested that a search of Consumer Sentinel be conducted for DNC complaints from January 1, 2012 through May 18, 2015, with the term "medical alert." When I received the results, I searched them for those complaints that satisfied the following criteria: (1) consumers' telephone numbers were registered with the National Registry; (2) consumers indicated that they did not have an established business relationship with the caller; and (3) consumers indicated that they had received a pre-recorded message. Based on my search criteria, Consumer Sentinel contained 3,871 "medical alert" complaints in 2012; 37,732 complaints in 2013; 36,486 complaints in 2014; and, from January 1, 2015 through May 18, 2015, there were 13,492 such complaints in Consumer Sentinel. Based on these search results, there are 91,581 "medical alert" complaints for the above time periods.

54. For each of the above years, I reviewed approximately 1% of the search results to determine whether the complaints were about receiving unwanted telemarketing calls or pre-recorded messages offering some type of medical alert device or service. In all, I reviewed 930 complaints, more than 95% of which were about offers for medical alert devices or services.

55. On June 16, 2015, I conducted a search of Consumer Sentinel for DNC and General Fraud complaints filed against "Lifewatch." These are complaints in which consumers identified the company as Lifewatch. I reviewed the search results and eliminated consumer complaints that did not appear to be related to Lifewatch. From January 1, 2012 through June 16, 2015, there are 433 DNC complaints and 232 General Fraud complaints against Lifewatch. Because Lifewatch is not typically identified on the robocalls or during the telemarketing sales

calls, the Consumer Sentinel complaints filed against Lifewatch likely vastly understate the actual number of complaints that are related to Lifewatch's telemarketing practices.

I declare under penalty of perjury that the foregoing statement is true and correct.

Executed on July 1, 2015.

Roberto C. Menjivar